**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, STATES OF CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW HAMPSHIRE, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VERMONT, WASHINGTON, and the COMMONWEALTHS OF MASSACHUSETTS, PUERTO RICO, VIRGINIA and the DISTRICT OF COLUMBIA, *ex rel.* JOHN COLLADO,<br><br>          Plaintiff-Relator,<br><br>v.<br><br>BRACCO USA, INC., BRACCO DIAGNOSTICS, INC., ACIST MEDICAL SYSTEMS, INC., NYU LANGONE HEALTH SYSTEM, INC., DUPAGE MEDICAL GROUP, HONORHEALTH, SOUTHERN ILLINOIS HEALTHCARE ENTERPRISES, INC., UNIVERSITY OF NEBRASKA, and JOHN DOE DEFENDANTS 1-100,<br><br>          Defendants. | No. 20cv8719 (EP) (JSA)<br><br>**OPINION** |

**PADIN, District Judge.**

This is a *qui tam* matter brought by Plaintiff/Relator John Collado ("Relator").  Presently before the Court are two motions to dismiss Relator's amended complaint under Federal Rule of Civil Procedure 12(b)(6).  The first is filed by Defendants Bracco USA, Inc., Bracco Diagnostics,

Inc., and Acist Medical Systems, Inc. (collectively, "Bracco").  D.E. 56.  The second is filed by

Defendants NYU Langone Health System, Inc., DuPage Medical Group, and Southern Illinois

Healthcare Enterprises, Inc. (collectively, the "Provider Defendants").  D.E. 61.  The Court has

reviewed the parties' submissions and decides the motion without oral argument.  *See* Fed. R. Civ.

P. 78(b); L.Civ.R. 78.1(b).  For the reasons stated below, both motions are **GRANTED**.

## I.   BACKGROUND

### A.  Factual Background[1]

Bracco manufactures and sells contrast media products, also known as imaging agents;

these products are substances which are injected into the body to enhance the blood and body

tissues of patients for medical imaging, such as x-rays, CT scans, MRIs, and ultrasounds.  D.E. 29

¶ 2, 98.  Bracco sells its contrast media products to hospitals and medical facilities throughout the

United States, including, but not limited to, the Provider Defendants.  *Id.*  ¶ 5.  Bracco also

manufactures, *inter alia*, the power injector machines used to administer imaging agents to

patients.  *Id.* ¶ 4.

Relator is a healthcare sales agent who, in the course of his career at Bracco's competitor,

Bayer, learned that Bracco has – since at least 2016 – been offering free power injector machines

to medical facilities that agree to purchase 90% of their contrast media products from Bracco.  *Id.*

¶¶ 10, 87, 108, 115.  These machines are each worth tens of thousands of dollars, and can be used

to inject imaging agents manufactured by any company, not just Bracco. *Id.* ¶ 108.  The free power

injection equipment is provided pursuant to certain "Injector Placement Agreements" for terms

ranging from three to five years.  *Id.* ¶ 112.  If a customer decides to stop purchasing contrast

---

[1] For the purposes of this Opinion, the Court accepts as true all of the amended complaint's well-pled factual allegations.

media products from Bracco at the end of the contract term, it can simply return the power injector for free, or, purchase it at a 70% discount. *Id.* ¶ 123.

All of the Provider Defendants submit claims for payment to the government for the imaging services they provide to patients and for the contrast media products they use to perform those services. *Id.* ¶ 132. These claims are paid under, *inter alia*, the Medicare and Medicaid programs. *Id.* ¶¶ 134-137. None of the Defendants are reporting the transfer or the receipt of the free power injectors as payments or "transfers of value" as required by the Sunshine Act, 42 U.S.C. § 1320a-7h(a). *Id.* ¶ 130. Further "[u]pon information and belief, Bracco is not taking these free power injectors into account in reporting its average sales prices of the [c]ontrast [m]edia [p]roducts to [g]overnment [a]gencies and none of the Provider Defendants are taking them into account when filing cost reports with federal agencies." *Id.* ¶ 131.

Relator avers that the foregoing actions violate the federal Anti-Kickback Statute ("AKS"), 42 U.S.C. §1320a-7b, *et seq.*, the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729, *et seq.*, and the various False Claims Acts of the States of California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Vermont, and Washington, the Commonwealths of Massachusetts, Puerto Rico and Virginia, and the District of Columbia.

Relator, in support of his claim that Bracco's arrangements with the Provider Defendants are unlawful under the foregoing statutes, notes that Covidian – which is a company that is no longer in the contrast/injector business and was once one of the top three contrast media agents and power injector companies in the United States – routinely provided free injector equipment with the sale of its contrast products until the AKS was amended to strictly control and prohibit

gifts to medical providers as incentives for medical supply sales.  *Id.* ¶ 107.  Thereafter, Covidian, and all other companies in the contrast/injector industry other than Bracco, ceased to supply free injector equipment financed through contrast media sales agreements.  *Id.*

It bears noting that Relator's pleading is lacking in specific details about the alleged arrangements and agreements between, and particular actions of, Bracco and each of the individual Provider Defendants.  Indeed, substantially all of the allegations pled in Relator's amended complaint are alleged against all Defendants, without further distinction.  This remains true notwithstanding that Relator avers that his claims against Defendants are rooted, in part, on documents that he is in possession of.  *See id.* ¶ 112 ("According to documents obtained by the Relator, Bracco supplies facilities that purchase a minimum quantity of Bracco [p]roducts with free power injection equipment using their so-called Injector Placement Agreement . . . .").

### B.  Procedural History

Relator initiated this *qui tam* action on July 7, 2020.  D.E. 1.  On September 3, 2021, the United States and all of the States, Commonwealths, and the District identified in the caption of Relator's pleading notified the Court of their decision not to intervene.  D.E. 8.  On November 24, 2021, Relator amended his pleading.  D.E. 29.  Relator's amended complaint contains forty counts: Counts 1-4 are four separate claims under the federal False Claims Act: (1) False Claims, 31 U.S.C. § 3729(a)(1)(A); (2) Use of False Records or Statements, 31 U.S.C. § 3729(a)(1)(B); (3) False Claims Conspiracy, 31 U.S.C. § 3729(a)(1)(C); and (4) Reverse False Claims, 31 U.S.C. § 3729(a)(1)(G).  Count 5 is a claim for Violations of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, *et seq.*  Counts 6, 8-14, and 16-38 allege violations of the FCA laws of the individual States, Commonwealths, and the District listed in the caption of Relator's pleading.  Counts 7 and 15 assert claims under the Insurance Fraud Prevention Acts ("IFPAs") of California and Illinois,

respectively; these statutes permit *qui tam* claims for fraud against private insurers based on the same underlying conduct that would support an FCA claim for fraud against the government. Count 39 is a claim for common law fraud. And Count 40 asserts a claim of unjust enrichment.

On May 31, 2022, Bracco and the Provider Defendants filed separate motions to dismiss the amended complaint. D.E.s 56, 61. Both motions seek dismissal of the amended complaint under Federal Rules of Civil Procedure 9(b) and 12(b)(6). *Id.* Relator opposes both motions. D.E.s 60, 62. Bracco and the Provider Defendants have also each filed a reply. D.E.s 63, 64.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. However, the allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. As the moving party, the defendant bears the burden of showing that no claim has been stated. *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of the motion, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Relator's fraud allegations are subject to heightened pleading requirements under Federal Rule of Civil Procedure 9(b).  Rule 9(b) provides: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  "Rule 9(b) requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

In the context of FCA claims, Rule 9(b) requires that a relator alleging fraud must "support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story — that is, the who, what, when, where and how of the events at issue.'"  *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Securities Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)); *see United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 272 (3d Cir. 2016).  However, the Third Circuit has clarified that under this pleading standard, a plaintiff need not identify a specific claim for payment.  *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 156 (3d Cir. 2014). "[I]t is sufficient for a plaintiff to allege 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'"  *Id.* at 156-57 (quoting *United States ex rel Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)); *see also United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 308 (3d Cir. 2011) (stating that plaintiff, at pleading stage, is not required to "identify a specific claim for payment . . . to state a claim for relief.").

"It is certainly true that allegations of 'date, place or time' fulfill these functions, but nothing in the rule requires them.  Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Seville Indus. Mach. Corp.*, 742 F.2d at 791; *United States ex rel. Judd v. Quest Diagnostics Inc.*, 638 F. App'x 162, 168-69 (3d Cir. 2015) (finding that to satisfy Rule 9(b)'s requirement to allege "the who, what, when, where and how of the events" giving rise to an FCA claim, a plaintiff must allege the particular details of a scheme).

"[D]escribing a mere opportunity for fraud will not suffice." *United States v. Omnicare, Inc.*, 903 F.3d 78, 91 (3d Cir. 2018).  A complaint that alleges "facts that could plausibly have either a legal or illegal explanation would be insufficient to meet Rule 9(b)'s burden, because a relator must establish a strong inference that false claims were submitted and the possibility of a legitimate explanation undermines the strength of the inference of illegality." *Id.* at 92 (quoting *Foglia*, 754 F.3d at 158) (cleaned up).

## III.    ANALYSIS

### A. Relator's FCA Claims

As noted, Counts 1, 2, 3, and 4 of Relator's amended complaint assert that Defendants violated 31 U.S.C. § 3729(a)(1)(A), (B), (C), and (G), respectively.  For the reasons detailed below, the Court concludes that dismissal of all four counts is appropriate:  Counts 1 and 2 (Relator's False Claims Act and False Records or Statements claims) are dismissed because Relator fails to allege sufficient facts which support a viable FCA claim against any particular Defendant; Count 4 (Relator's Reverse FCA claim) is dismissed as redundant of Counts 1 and 2; and Count 3 (Relator's FCA Conspiracy claim) is dismissed based on Relator's failure to adequately plead an underlying FCA violation.

The FCA imposes liability on any person who, *inter alia*:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim[2] for payment or approval; [or]
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or]
>
> (C) conspires to commit a violation of subparagraph (A) [or] (B) . . . or (G) [or]
>
> . . . .
>
> (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

31 U.S.C. § 3729(a)(1); *see also United States ex rel. Greenfield v. Medco Health Sols., Inc.*, 880 F.3d 89, 94 (3d Cir. 2018).

Counts 1 and 2 of Relator's amended complaint allege that Defendants violated FCA Sections 3729(a)(1)(A) and (B). To establish a cause of action under these provisions, a plaintiff must allege "four elements: falsity, causation, knowledge, and materiality." *U.S. ex rel. Petratos v. Genentech, Inc.*, 855 F.3d 481, 487 (3d Cir. 2017); *Wilkins*, 659 F.3d at 304-05. The only difference between a § 3729(a)(1)(A) and a § 3729(a)(1)(B) claim is that in a Section (B) claim, a plaintiff must prove the additional element that the defendant made, used, caused to be made or used, "a false record to cause a false claim to be paid or approved." *U.S. ex rel. Hefner v. Hackensack Univ. Med. Ctr.*, 2005 WL 3542471, at *10 (D.N.J. Dec. 23, 2005) (citations omitted), *aff'd*, 495 F.3d 103 (3d Cir. 2007). The first three elements require a plaintiff to show that "(1)

---

[2]  A "claim" includes direct requests for government payment as well as reimbursement requests made under a federal benefits program. *Universal Health Servs. v. United States ex rel. Escobar*, 579 U.S. 176, 182 (2016); *see also* 31 U.S.C. § 3729(b)(2)(A).

the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent." *Wilkins*, 659 F.3d at 304-05 (internal quotation and citation omitted).

"A false or fraudulent claim may be either factually false or legally false." *Greenfield*, 880 F.3d at 94. A factually false claim is one in which "'the claimant misrepresents what goods or services . . . it provided to the Government.'" *Id.* (quoting *Wilkins*, 659 F.3d at 305). A claim "is legally false when the claimant lies about its compliance with a statutory, regulatory, or contractual requirement." *Id.* When a plaintiff, like Relator here, alleges a legally false claim, "he or she must also prove the defendant's misrepresentation about its compliance with a legal requirement is 'material to the Government's payment decision.'" *Id.* (quoting *Escobar*, 579 U.S. at 181).

The FCA is extensive in its coverage and is intended to "reach any person who knowingly assisted in causing the government to pay claims which were grounded in fraud, without regard to whether that person had direct contractual relations with the government." *U.S. ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 243 (3d Cir. 2004) (citing *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 544-45 (1943)). Accordingly, Defendants can be found liable under the FCA even if they themselves did not actually present false claims to the government. *Id.* at 242-44. The critical issue is whether Defendants knowingly assisted in the presentation of such claims. *Id.*

In the Medicare context, the government conditions compensation on compliance with certain laws, including the Anti-Kickback amendment to the Social Security Act, 42 U.S.C. § 1320a-7b(b). The AKS criminalizes "kickbacks." Specifically, the AKS forbids any person or entity from knowingly and willfully offering, paying, soliciting, or receiving anything of value to influence the referral of items or services reimbursable by a federal healthcare program. 42 U.S.C. § 1320a-7b(b)(1), (2); *accord Greenfield*, 880 F.3d at 94-95.

Where, as here, a plaintiff alleges a predicate AKS violation in support of an FCA claim, the "relevant task for this Court is to determine whether Defendants violated . . . the Anti-Kickback Statute." *United States ex rel. Bartlett v. Ashcroft*, 39 F. Supp. 3d 656, 665 (W.D. Pa. 2014).  To state a violation of the AKS, a plaintiff must plead that defendants "(1) "knowingly and willfully"; (2) "solicit[ed] or receive[d] any remuneration" or "offer[ed] or pa[id] any remuneration" (3) "in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good . . . or item for which payment may be made in whole or in part under a Federal health care program."   42 U.S.C. §§ 1320a-7b(b)(1)(B), (b)(2)(B)); *accord United States v. Goldman*, 607 F. App'x 171, 173-74 (3d Cir. 2015) (setting forth nearly identical *prima facie* standard under 42 U.S.C. § 1320a-7b(b)(1)(A)).  "The submission of a Medicare claim in violation of [the AKS] will establish a 'legally false' claim under the FCA." *Id.*  It bears noting that an AKS violation will not occur when certain information is "properly disclosed and appropriately reflected in the costs claimed."  *See* 42 U.S.C. § 1320a-7b(b)(3)(A).

Here, Relator claims that Provider Defendants received free power injector equipment from Bracco, *i.e.*, remuneration, in exchange for the Provider Defendants agreeing to purchase 90% of their contrast media agents from Bracco, *i.e.*, items for which payment is made under federal healthcare programs.  Relator further avers that this arrangement was never properly disclosed to the government, and thus, this resulted in the submission of, *inter alia*, Medicare claims that were legally false under the FCA.  It appears that these allegations could support a viable FCA claim under 31 U.S.C. §§ 3729(a)(1)(A) and (a)(1)(B).  Indeed, "[f]alsely certifying compliance with the . . . Anti-Kickback Act[ ] in connection with a claim submitted to a federally funded insurance program is actionable under the FCA," and can be sustained on a theory of implied false certification.  *See Wilkins*, 659 F.3d at 313 (citing *U.S. ex rel. Kosenske v. Carlisle HMA, Inc.*, 554

F.3d 88, 94 (3d Cir. 2009); *see also Schmidt*, 386 F.3d at 243 ("A certificate of compliance with federal health care law is a prerequisite to eligibility under the Medicare program."); *Greenfield*, 880 F.3d at 95 (a claim for payment made pursuant to an illegal kickback is "false" under the FCA).

In that respect, it is telling that neither Bracco nor the Provider Defendants argue that the overall kickback scheme alleged by Relator fails, as a general matter, to support a viable FCA claim.  Instead, Defendants move for dismissal based on, *inter alia*, Relator's failure to satisfy Rule 9(b)'s heightened pleading standard.  D.E. 61-1 at 12-24, 32-36, 39; D.E. 56-1 at 20-22.  Again, "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . ."  Fed. R. Civ. P. 9(b).  This requires a plaintiff to plead "'all of the essential factual background that would accompany the first paragraph of any newspaper story — that is, the who, what, when, where and how of the events at issue.'"  *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)).

The Court agrees with Defendants that the facts alleged by Relator in support of his FCA claims lack adequate detail to proceed as pled.  *See* D.E. 61-1 at 12-24, 32-36, 39; D.E. 56-1 at 20-22.  First, as to the "who," Relator's factual allegations throughout the amended complaint are almost universally alleged against all Defendants, without further distinction.  D.E. 56-1 at 21.  *See Galicki v. New Jersey*, No. CIV.A. 14-169 JLL, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015) ("conclusory allegations against Defendants as a group" are insufficient to survive a motion to dismiss).  Relator likewise fails to plead sufficient information about the "what" and "how" of the alleged kickback scheme.  While Relator claims that Defendants utilized "sham contracts" and "fictitious agreements," he provides no details about any specific contract entered into by a

particular defendant. *See U.S. ex rel. Zwirn v. ADT Sec. Servs., Inc.*, No. CIV. 10-2639 KSH, 2014 WL 2932846, at *8 (D.N.J. June 30, 2014) (Rule 9(b) requires more than "assert[ing] that the contracts exist and surmis[ing] that certain terms existed in them."). Relator's omission of this information is particularly glaring given that he expressly claims to be in possession of documents that bolster this claim. D.E. 29 ¶ 112. *See United States ex rel. Perri v. Novartis Pharms. Corp.*, No. CV 15-6547, 2019 WL 6880006, at *17 (D.N.J. Feb. 21, 2019) ("This is not a case in which factual pleading standards should be relaxed because a defendant has a monopoly on the facts."). As to the "when," Relator merely alleges that the "scheme" amongst all Defendants began "at least as early as 2016 and continues to the present." D.E. 29 ¶ 10. Finally, as to the "where," Relator's amended complaint fails to contain any specific information as to where any agreement was entered, or any sale or delivery took place.

In short, "the broad and sweeping allegations of the complaint lack precision," and fail to satisfy Rule 9(b). *Zwirn*, 2014 WL 2932846, at *8. Relator, in other words, has failed to sufficiently provide the "particular details of a scheme to submit false claims." *Foglia*, 754 F.3d at 156-57 (citations omitted). The Court will accordingly dismiss Counts 1 and 2, *i.e.*, Relator's §§ 3729(a)(1)(A) and (a)(1)(B) FCA claims, for this reason. Dismissal of these counts is without prejudice.

Count 4 of Relator's amended complaint alleges a violation of 31 U.S.C. § 3729(a)(1)(G). This "'reverse false claims' provision [of the FCA] imposes liability on anyone who 'knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.'" *United States v. Berkeley Heartlab, Inc.*, 247 F. Supp. 3d 724, 732 (D.S.C. 2017)

(citing 31 U.S.C. § 3729(a)(1)(G)).  In this context, an "obligation" includes "the retention of any overpayment."  *Id.* (citing 31 U.S.C. § 3729(b)(3)).

Here, Relator alleges that the Provider Defendants received payments for claims that were tainted by violations of the AKS, and thus, the Provider Defendants were required to return these overpayments.  According to Relator, it follows that because the Provider Defendants did not return these payments, they are liable under Section 3729(a)(1)(G).  The problem with this claim is that it is based on the exact same conduct underlying Relator's Count 1 and Count 2 claims that Defendants' actions violated Sections 3729(a)(1)(A) and (a)(1)(B), respectively.  And it is well-settled that reverse false claims may not be based on the same conduct as a plaintiff's claims under 31 U.S.C. §§ 3729(a)(1)(A) and (a)(1)(B).  *See United States v. Premier Educ. Grp., L.P.*, No. 11-3523 (RBK/AMD), 2016 WL 2747195, at *18 (D.N.J. May 11, 2016) ("Courts within this circuit have consistently held that the reverse false claims provision is not a vehicle to simply recast an identical claim under [] traditional false claim provisions."); *United States ex rel. Petratos v. Genentech, Inc.*, 141 F. Supp. 3d 311, 322 (D.N.J. 2015), *aff'd*, 855 F.3d 481 (3d Cir. 2017) ("Claims raised under the FCA's reverse false claims provision may not be redundant of FCA claims asserted under other provisions of [the FCA].") (quotation and citation omitted); *Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 280-81 (E.D. Pa. 2020) (dismissing Relators' § 3729(a)(1)(G) claims as "merely recast[ing] their §§ 3729(a)(1)(A) and (B) claims.").  Count 4 of Relator's amended complaint will accordingly be dismissed, albeit without prejudice.

Count 3 of Relator's amended complaint alleges a violation of 31 U.S.C. § 3729(a)(1)(C); this provision "imposes liability for any person who 'conspires to commit a violation of subparagraph (A) [or] (B) [or (G)],'" but "[w]ithout an underlying violation, there can be no liability for conspiracy under the FCA."  *Petratos*, 141 F. Supp. 3d at 317 n.3; *see also United*

13

*States ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 507 n.53 (3d Cir. 2017) ("[T]here can be no liability for conspiracy where there is no underlying violation of the FCA.") (quotations and citation omitted).  Thus, Relator's Count 3 FCA conspiracy claim "rises or falls with the others." *Petratos*, 141 F. Supp. 3d at 317 n.3.  As noted, all of Realtor's other federal FCA claims (at Counts 1, 2, and 4) are dismissed.  And because "there can be no liability for conspiracy where there is no underlying violation of the FCA," *Petras*, 857 F.3d at 507 n.53, Count 3, *i.e.*, Relator's § 3729(a)(1)(C) conspiracy claim, is likewise dismissed without prejudice.

Relator's state FCA and IFPA claims, at Counts 6-38 are also dismissed.  Indeed, each such state law claim rests on the exact same factual allegations and exact same kickback theory as Relator's federal FCA claims.  It follows that Relator's pleading of these claims is also deficient. *See United States ex rel. Travis v. Gilead Scis., Inc.*, --- F. Supp. 3d ---, No. CV 17-1183, 2022 WL 991382, at *12 n.159 (E.D. Pa. Apr. 1, 2022) ("Where no party has alleged a material difference between the standards applicable to the FCA and equivalent state laws, on a motion to dismiss these claims succeed or fall together."); *Petratos*, 141 F. Supp. 3d at 322 ("The Court has dismissed all federal [FCA] claims.  Because Plaintiff does not provide any allegations or analysis differentiating the state [FCA] claims from the [federal] FCA claims, they are dismissed as well."); *United States ex rel. DiLello v. Hackensack Meridian Health*, No. CV 20-02949 (FLW), 2022 WL 1284734, at *10 (D.N.J. Apr. 29, 2022) ("Because Relator does not differentiate between the state and FCA claims, these claims fail for the same reasons as the federal FCA claim"); *United States ex rel. Judd v. Quest Diagnostics Inc.*, No. 10-4914, 2014 WL 2435659, at *17 (D.N.J. May 30, 2014) (dismissing both FCA and state claims with prejudice concurrently).  Dismissal of Counts 6-38 is also without prejudice.

### C.  Relator's Standalone AKS Claim

In Count 5, Relator alleges a standalone claim[3] for "Violations of the Anti-Kickback Statute (42 U.S.C. § 1320a-7b, *et seq.*)."  The Provider Defendants aver that Count 5 must be dismissed because "[i]t is black-letter law . . . that the AKS 'is a criminal statute for which no private cause of action exists.'"  D.E. 61-1 at 36-37 (quoting *U.S. ex rel. Schmidt v. Zimmer, Inc.*, No. Civ.A.00-1044, 2005 WL 1806502, at *3 n.5 (E.D. Pa. July 29, 2005)).  Bracco echoes that sentiment.  D.E. 56-1 at 2 ("The AKS is a criminal statute and untethered from the FCA, can only be prosecuted in court by the Department of Justice or administratively by the Department of Health and Human Services.  There is no private right of action.").  The Court agrees.  *See Rzayeva v. United States*, 492 F. Supp. 2d 60, 78 (D. Conn. 2007) ("No private cause of action exists under . . . 42 U.S.C. § 1320a–7b."); *Donovan v. Rothman*, 106 F.Supp.2d 513, 516 (S.D.N.Y.2000) ("There is no private cause of action to redress violations of . . . § 1320a–7b[.]") (citations omitted).  Count 5 is accordingly dismissed with prejudice as against all Defendants.

### D.  Relator's Unjust Enrichment and Common Law Fraud Claims

Bracco and the Provider Defendants both argue that Counts 39 and 40 must be dismissed because Relator does not have standing to assert claims for unjust enrichment and fraud.  D.E. 56-1 at 6-7; D.E. 61-1 at 39.  The Court agrees.  Relator lacks standing to pursue common law claims on a *qui tam* basis.  *See U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 452 (S.D.N.Y. 2001) ("the FCA 'does not give relators the right to assert common law claims on behalf of the United States.'") (citations omitted); *U.S. ex rel. Morgan v. Express Scripts, Inc.*, No. 2:05-CV-1714 DMC JAD, 2013 WL 6447846, at *14 (D.N.J. Dec. 9, 2013) ("Congress has

---

[3] To be clear, Relator's standalone AKS claim is distinct from the predicate AKS violation he alleges in support of his FCA claims.

not granted the Relator any . . . rights" under the FCA to "bring common law claims."), *aff'd sub nom. United States v. Express Scripts, Inc.*, 602 F. App'x 880 (3d Cir. 2015).   Furthermore, Relator's amended complaint does not allege that he himself has suffered any injury in fact that would independently provide him with standing to bring a claim of unjust enrichment or common law fraud against any of the Defendants.   Relator, moreover, does not challenge that he lacks standing to bring these claims or otherwise argue against dismissal of Counts 39 and 40.   *See* D.E. 62 at 33 n.6 (Relator acknowledging that "these claims are included for declaratory purposes only").   Relator's common law fraud and unjust enrichment claims, Counts 39 and 40, are accordingly dismissed with prejudice as against all Defendants.

### E.  Relator is Granted Leave to Amend

Dismissal of Counts 1-4 and 6-38 is without prejudice, and Relator will be afforded the opportunity to amend his complaint to address the pleading deficiencies associated with those claims.   Leave to amend a pleading "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).   There has been no prior dismissal decision rendered in this matter and Defendants have not demonstrated that it would be prejudicial, futile, or otherwise unfair for Relator to be given leave to amend.   It is consistent with principles of fairness and justice to afford Relator an opportunity to do so.   Relator may file an amended complaint within 60 days of the date of this Opinion.

## IV.     CONCLUSION

For the reasons above, the Provider Defendants and Bracco's respective motions to dismiss Relator's amended complaint are **GRANTED**.  Counts 1-4 and Counts 6-38 of Relator's amended complaint are dismissed without prejudice.  Counts 5, 39, and 40 are dismissed with prejudice.


Dated: December 27, 2022                                   /s/ Evelyn Padin
                                                          Evelyn Padin, U.S.D.J.