<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, STATES OF CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW HAMPSHIRE, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VERMONT, WASHINGTON, and the COMMONWEALTHS OF MASSACHUSETTS, PUERTO RICO, VIRGINIA, and the DISTRICT OF COLUMBIA, *ex rel.* JOHN COLLADO,<br><br>    Plaintiff-Relator,<br><br>v.<br><br>BRACCO USA, INC., BRACCO DIAGNOSTICS, INC., ACIST MEDICAL SYSTEMS, INC., NYU LANGONE HEALTH SYSTEM, INC., DUPAGE MEDICAL GROUP, HONORHEALTH, SOUTHERN ILLINOIS HEALTHCARE ENTERPRISES, INC., KERN COUNTY HOSPITAL AUTHORITY, and JOHN DOE DEFENDANTS 1-100,<br><br>    Defendants. | No. 20cv8719 (EP) (JSA)<br><br>**OPINION** |

**PADIN, District Judge.**

This is a *qui tam* matter brought by Plaintiff/Relator John Collado ("Relator") against Defendants Bracco USA, Inc., Bracco Diagnostics, Inc., and Acist Medical Systems, Inc. (collectively, "Bracco"); NYU Langone Health System, Inc. ("NYU Langone"); DuPage Medical Group ("DuPage"); HonorHealth; Southern Illinois Healthcare Enterprises, Inc. ("Southern

Illinois Health"); and Kern County Hospital Authority ("Kern County") (collectively, excluding Bracco, "Providers").

The Court previously dismissed Relator's First Amended Complaint. D.E. 71 ("FAC"). Bracco and each Provider now separately move to dismiss Relator's Second Amended Complaint, D.E. 76 ("SAC"), under Federal Rule of Civil Procedure 12(b)(6). *See* D.E.s 93, 95-98, 100. The Court has reviewed the parties' submissions and decides the motions without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78.1(b). For the reasons below, the motions will be **GRANTED**, and the SAC will be **DISMISSED with prejudice**.

I.     BACKGROUND

A.  **Factual Background**[1]

Bracco manufactures and sells contrast media products, also known as imaging agents, which are substances injected into a medical patient's body to enhance their blood and body tissues for medical imaging, such as x-rays, CT scans, MRIs, and ultrasounds. SAC ¶¶ 2, 5. Bracco sells its contrast media products to hospitals and medical facilities nationwide, including to Providers. *Id.* ¶ 5. Bracco also manufactures power injector machines, which are equipment used to administer imaging agents to patients. *Id.* ¶ 4.

Relator is a healthcare sales agent who, during his career at Bracco's competitor, Bayer, learned that since at least 2014, Bracco has offered free power injector machines to medical facilities that agree to purchase 90% of their contrast media products from Bracco. *Id.* ¶¶ 10, 110-113, 122, 131. These machines are each worth tens of thousands of dollars and can inject imaging agents manufactured by any company, not just by Bracco. *Id.* ¶ 106. The free power injection

---

[1] This section derives mainly from the SAC's well-pleaded factual allegations, which the Court accepts as true on a motion to dismiss. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)

2

equipment is provided pursuant to certain "Injector Placement Agreements" ("Agreements") for terms ranging from three to five years.[2] *Id.* ¶ 110. At the end of an Agreement's term, if a customer decides to stop purchasing contrast media products from Bracco, the customer can either return the power injector for free or purchase it at a 70% discount. *Id.* ¶ 121.

The Providers submit claims for government payment under Medicare and Medicaid programs for (1) the imaging services they provide to patients and (2) the contrast media products they use to provide those services. *Id.* ¶¶ 142, 144-47. When submitting these claims, the Providers are required to report payments and "transfers of value" pursuant to the Sunshine Act, 42 U.S.C. § 1320a-7h(a). *Id.* ¶ 140. However, none of the Providers are reporting the transfer or the receipt of the free power injectors. *Id.* Further, "[u]pon information and belief, Bracco is not [accounting for] these free power injectors [when] . . . reporting its average sales prices of the [c]ontrast [m]edia [p]roducts to [g]overnment [a]gencies[,] and . . . the Provider[s] . . . are not [accounting for the power injectors] when filing cost reports with federal agencies." *Id.* ¶ 141.

**B. Procedural History**

Relator initiated this *qui tam* action on July 7, 2020. D.E. 1. On September 3, 2021, the governments/sovereigns identified in the case caption chose not to intervene. D.E. 8. Relator then amended his pleading. *See* FAC. The FAC contained forty counts:

- Counts One through Four alleged violations of the federal False Claims Act ("FCA"): (1) False Claims, 31 U.S.C. § 3729(a)(1)(A); (2) Use of False Records or Statements, 31 U.S.C. § 3729(a)(1)(B); (3) False Claims Conspiracy, 31 U.S.C. § 3729(a)(1)(C); and (4) Reverse False Claims, 31 U.S.C. § 3729(a)(1)(G), respectively;
- Count Five alleged violations of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, *et seq.*;

---

[2] Relator includes (1) Bracco's template Agreement and (2) Agreements between Bracco and DuPage—allegedly as "successor in interest" to non-parties Meridian Medical Associates and Pronger Smith Med Care—and between Bracco and Kern County. SAC Exs. A-D.

3

- Counts Six, Eight through Fourteen, and Sixteen through Thirty-Eight alleged violations of the state/district FCA equivalent laws;
- Counts Seven and Fifteen asserted claims under the Insurance Fraud Prevention Acts ("IFPAs") of California and Illinois, respectively;
- Count Thirty-Nine alleged common law fraud; and
- Count Forty alleged unjust enrichment.

Bracco, individually, and the Providers, collectively,[3] moved to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6). D.E.s 56 & 61. The Court granted both motions and dismissed all counts without prejudice except for Counts Five, Thirty-Nine, and Forty, which were dismissed with prejudice. D.E. 71 ("MTD Op."). The Court also granted Relator leave to amend. *Id.*

The SAC realleges the thirty-seven remaining claims and adds Kern County as a Defendant. All named Defendants separately move to dismiss under Rules 9(b) and 12(b)(6). D.E.s 93 ("Bracco Mot."), 95 ("Honorhealth Mot."), 96 ("Southern Illinois Mot."), 97 ("DuPage Mot."), 98 ("Kern County Mot."), & 100 ("NYU Langone Mot.").[4] Relator opposes.[5] D.E. 102 ("Opp'n"). All Defendants reply.[6] *See* D.E.s 103 ("Bracco Reply"), 104-106,[7] 107 ("DuPage Reply"), & 108.[8]

---

[3] Excluding Kern County, who was not yet a party to the case.
[4] All of the Providers adopt the arguments in the Bracco and/or DuPage Motions, which discuss at length Relator's failure to satisfy Rule 9(b). *See* Honorhealth Mot. at 1; Southern Illinois Mot. at 1; Kern County Mot. at 16; NYU Langone Mot. at 1. Because the Court will dismiss the SAC under Rule 9(b), it will not address Defendants' other arguments for dismissal, and will only cite the Bracco and DuPage Motions.
[5] Relator responds to all Motions in one brief.
[6] For the reasons noted above, *supra* n.4, the Court will only cite the Bracco and DuPage Replies.
[7] NYU Langone, Kern County, & Southern Illinois, respectively.
[8] Honorhealth.

## II. LEGAL STANDARD

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233 (internal quotation marks omitted). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, the plaintiff's claims must be facially plausible, meaning that the well-pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In deciding the motion, "a court must consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard for fraud allegations. *In re Rockefeller Ctr. Props. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A plaintiff must state the circumstances of their alleged cause of action with sufficient particularity to "place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). At a minimum, this requires that the plaintiff allege the "who, what, when, where[,] and how" of the allegedly fraudulent acts.

5

*United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016).

When applying Rule 9(b) to FCA claims, a plaintiff need not identify a specific claim for payment. *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 156 (3d Cir. 2014). "[I]t is sufficient for a plaintiff to allege [(1)] 'particular details of a scheme to submit false claims paired with [(2)] reliable indicia that lead to a strong inference that claims were actually submitted.'" *Id.* at 156-57 (quoting *United States ex rel Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)). Though "allegations of 'date, place[,] or time' fulfill these functions, . . . [p]laintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Seville Indus. Mach. Corp.*, 742 F.2d at 791.

However, "describing a mere opportunity for fraud will not suffice." *United States v. Omnicare, Inc.*, 903 F.3d 78, 91 (3d Cir. 2018). Allegations of "facts that could plausibly have either a legal or illegal explanation" fall short of Rule 9(b)'s burden because "the possibility of a legitimate explanation undermines" an inference that false claims were submitted. *Id.* at 92 (quoting *Foglia*, 754 F.3d at 158).

### III. ANALYSIS

#### A. FCA Standards

The FCA imposes liability on any person who:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim[9] for payment or approval; [or]
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or]

---

[9] A "claim" includes direct requests for government payment as well as reimbursement requests made under a federal benefits program. *Universal Health Servs. v. United States ex rel. Escobar*, 579 U.S. 176, 182 (2016); *see also* 31 U.S.C. § 3729(b)(2)(A).

6

> (C) conspires to commit a violation of [a] subparagraph [of this section]; . . . [or] . . .
>
> (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

31 U.S.C. § 3729(a)(1); *see also United States ex rel. Greenfield v. Medco Health Sols., Inc.*, 880 F.3d 89, 94 (3d Cir. 2018).

The FAC alleged Defendants violated Sections (A) (Count One, "False Claims"), (B) (Count Two, "False Records/Statements"), (C) (Count Three, "Conspiracy"), and (G) (Count Four, "Reverse False Claims"). Because the SAC does not correct the FAC's deficiencies, the Court will dismiss Counts One through Four.[10] As discussed below, *see infra* nn.18-20, the Court's dismissal of these claims necessitates dismissal of Relator's Conspiracy, Reverse False Claims, and state/district FCA equivalent claims. *See* MTD Op. at 12-14 (finding dismissal of these claims was required after dismissing the False Claims and False Records/Statements claims).

To establish a False Claims and/or False Records/Statements claim, a plaintiff must show that "(1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 308 (3d Cir. 2011) (cleaned up). For a False Records/Statements claim, a plaintiff must establish the additional element that the defendant made, used, or caused to be made or used, "a false record to cause a false claim to be paid or approved." *U.S. ex rel. Hefner v. Hackensack Univ. Med. Ctr.*,

---

[10] The Court will grant Relator one final opportunity to amend and address these deficiencies. *See* Fed. R. Civ. P. 15(a) (Leave to amend a pleading "shall be freely given when justice so requires.").

7

2005 WL 3542471, at *10 (D.N.J. Dec. 23, 2005) (citations omitted), *aff'd*, 495 F.3d 103 (3d Cir. 2007).

"A false or fraudulent claim may be either factually false or legally false." *Greenfield*, 880 F.3d at 94. Relevant here, a claim "is legally false when the claimant lies about its compliance with a statutory, regulatory, or contractual requirement."[11] *Id.* A plaintiff alleging a legally false claim must establish that "the defendant's misrepresentation about its compliance with a legal requirement is 'material to the Government's payment decision.'" *Id.* (quoting *Escobar*, 579 U.S. at 181).

A submitted claim that violates the Anti-Kickback Statute ("AKS") is a legally false claim. *See id.* The AKS forbids any person or entity from knowingly and willfully offering, paying, soliciting, or receiving anything of value to influence the referral of items or services reimbursable by a federal healthcare program. 42 U.S.C. §§ 1320a-7b(b)(1), (2). A plaintiff alleging an AKS violation must establish that the defendant (1) "knowingly and willfully" (2) "solicit[ed] or receive[d] any remuneration" or "offer[ed] or pa[id] any remuneration" (3) "in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good . . . or item for which payment [is made] . . . under a Federal health care program." 42 U.S.C. §§ 1320a-7b(b)(1)(B), (b)(2)(B)); *accord United States v. Goldman*, 607 F. App'x 171, 173-74 (3d Cir. 2015) (nearly identical standards apply to 42 U.S.C. § 1320a-7b(b)(1)(A)). However, an AKS violation will not occur when certain information is "properly disclosed and appropriately reflected in the costs claimed . . . ." 42 U.S.C. § 1320a-7b(b)(3)(A).

---

[11] A factually false claim is one in which "the claimant misrepresents what goods or services . . . it provided to the Government." *Greenfield*, 880 F.3d at 94 (quoting *Wilkins*, 659 F.3d at 305).

8

### B. Relator Does Not Sufficiently Plead a Scheme to Submit False Claims

Here, Relator claims that Providers received free power injector equipment from Bracco (remuneration) in exchange for Providers agreeing to purchase 90% of their contrast media agents from Bracco (items for which payment is made under federal healthcare programs). SAC ¶ 121. Relator also alleges this arrangement was never properly disclosed to the Government, which resulted in the submission of legally false Medicare claims. *Id.* ¶ 107.

Again, "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). This requires a plaintiff to plead "the who, what, when, where[,] and how of the events at issue." *Majestic Blue Fisheries, LLC*, 812 F.3d at 307 (quoting *In re Rockefeller Ctr.*, 311 F.3d at 217). The Court previously found the FAC "failed to sufficiently provide the 'particular details of a scheme to submit false claims[.]'" MTD Op. at 12 (quoting *Foglia*, 754 F.3d at 156-57 (citations omitted)). For the "who," Relator's allegations were "almost universally alleged against all Defendants, without further distinction," which was improper group pleading. *Id.* at 11. For the "'what' and 'how' of the alleged kickback scheme[,]" though Relator "claim[ed] that Defendants utilized 'sham contracts' and 'fictitious agreements,' he provide[d] no details about any specific contract . . . ."[12] *Id.* at 11-12. For the "'when,' Relator merely allege[d] that the 'scheme' amongst all Defendants began 'at least as early as 2016 and continues to the present.'" *Id.* at 12 (quoting FAC ¶ 10). "Finally, [for] the 'where,'" Relator failed to allege "any specific information as to where any agreement was entered[] or any sale or delivery took place." *Id.*

---

[12] The Court found this "particularly glaring given that [Relator] expressly claim[ed] to be in possession of documents that *bolster* this claim." MTD Op. at 12 (emphasis added). As discussed below, though some documents are now included, their contents do not "bolster" Relator's claim.

9

Besides omitting the claims previously dismissed with prejudice, the FAC and SAC materially differ in two ways. First, the SAC adds Kern County as a Defendant. And second, the SAC attaches and includes details from some of the alleged "sham" Agreements: (1) Bracco's template Agreement and (2) Agreements between Bracco and DuPage—allegedly as "successor in interest" to non-parties Meridian Medical Associates and Pronger Smith Med Care[13]—and between Bracco and Kern County. *See* SAC Exs. A-D; Bracco Mot. App. A (table of all new language included in the SAC). Relator does not attach any Agreements between Bracco and NYU Langone, Southern Illinois, or HonorHealth, but he alleges these Defendants also entered into Agreements with the "same material terms." SAC ¶ 131. With these new allegations, Relator defines the (1) "who" as each Defendants' name;[14] (2) "when" as the month and/or year the "sham" Agreements were executed;[15] (3) "where" as Defendants' facility locations[16] and as "the place the claims and reports were filed," information Relator claims is unavailable to him; and (4) "what" and "how" as the "sham" Agreements that caused the submission of false claims. Opp'n at 13-16.

Defendants argue that these additional facts still fail to allege any particular details of a scheme to submit false claims, and thus the SAC does not satisfy Rule 9(b). *See, e.g.*, DuPage Mot. at 13-20. Relator disagrees. Opp'n at 18. However, Relator, in response to a different argument for dismissal, acknowledges that the Agreements "do[] not contain ***any*** allegation or transaction of fraud, much less the essential facts . . . that [evidence] the contract[s] [are]

---

[13] Relator does not elaborate. *See generally* SAC; Opp'n at 14.
[14] E.g., "Bracco," "DuPage." *Id.* at 13 & 14.
[15] E.g., "[i]n October 2014 and July 2015" (DuPage), "[s]tarting in 2019" (Kern County), "[u]pon information and belief, starting in 2014" (HonorHealth). *Id.* at 14-16.
[16] E.g., "nationwide" (Bracco), "at NYU Langone facilities, which are in . . . New York and New Jersey" (NYU Langone), "at HonorHealth and Southern Illinois facilities" (HonorHealth and Southern Illinois). *Id.*

10

sham[s]."[17]  Opp'n at 28 (emphasis in original); *see also id.* at 29 (claiming the Agreements "d[o] not disclose any elements of the alleged fraud, including the participants, the scheme, or the nature of the fraud"); DuPage Reply at 7 ("[A]s Relator does not dispute, the Agreement[s] sketch[] only the broad contours of how a scheme could have operated—not how any scheme actually worked in practice.").  But both things cannot be true—either the Agreements provide the "essential facts" of a scheme to submit false claims, or they do not.

The Court finds they do not.  As Relator acknowledges, the Agreements do not divulge the participants in the alleged scheme, or the "who," and Relator's allegations consist of only Defendants' company names and make no distinction between each Defendant's participation in the scheme.  *See* Opp'n at 13-16, 29.  Like before, the broad group pleading that all Defendants violated the FCA is insufficient.  *See* MTD Op. at 11 (quoting *Galicki v. New Jersey*, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015)) ("[C]onclusory allegations against [d]efendants as a group" are insufficient to survive a motion to dismiss.).

As for the "what" and "how," Relator only alleges an opportunity for fraud, namely that these Agreements, though not fraudulent on their face, are "shams."  *See Omnicare, Inc.*, 903 F.3d at 92 (quoting *Foglia*, 754 F.3d at 158) ("[T]he possibility of a legitimate explanation undermines" an inference that false claims were submitted).  The Court agrees with Defendants that Relator must allege specific facts as to the "particular Bracco products the Providers—let alone any specific Providers—purchased[]" and what specific services were performed by Providers with

---

[17] This argument is in response to Kern County's argument for an additional ground for dismissal as to only Kern County, which the Court will not address because dismissal is universally warranted for deficient pleadings.  But, because Relator claims all of the Agreements are materially the same, if Kern County's Agreement does not provide the "essential facts" of a scheme to submit false claims, neither do the other Agreements.  *See* SAC ¶¶ 129 & 132 (alleging the Agreements contain the "same material terms"); Opp'n at 13-16 (using the same type of information to describe the who, what, when, where, and how as to each Defendant).

11

Bracco equipment/products, as "only those purported services could have potentially resulted in false claims." DuPage Mot. at 17; *see also U.S. ex rel. Zwirn v. ADT Sec. Servs., Inc.*, 2014 WL 2932846, at *8 (D.N.J. June 30, 2014) (finding the plaintiff failed to satisfy Rule 9(b), even under a more "liberal" application, when the allegations did not include "specifics of the individual contract and the invoices submitted under the contract[]" and contained "only the broad outlines" of a scheme to submit false claims).

Nor has Relator remedied the deficiencies the Court previously noted as to the "when" and "where" of the alleged scheme. For the "when," the Court found Relator's prior allegations were insufficient because he "merely allege[d] that the 'scheme' amongst all Defendants began 'at least as early as 2016 and continues to the present.'" MTD Op. at 12 (citing FAC ¶ 10). In the SAC, Relator has changed this allegation to include an even broader period, "dat[ing] back to at least 2014 . . . and continu[ing] to the present." SAC ¶ 131. For the "where," the Court found Relator's prior allegations were insufficient because he did not allege any specific information as to where the Agreements were entered into or where any sale or delivery of Bracco's products took place. MTD Op. at 12. Relator still does not include this information. And as for "where" the submission of false claims and/or reports occurred, as to each Defendant, he conclusory states this occurred at "the place the claims and reports were filed . . . ." *See, e.g.*, Opp'n at 15.

Relator argues that he does not have to allege this kind of specific detail because he "is not an insider" and thus can "use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.* at 18 n.4 (quoting *Seville Indus. Mach. Corp.*, 742 F.2d at 791). Notwithstanding that the Court already determined the pleading standard should not be relaxed as to Relator, *see* MTD Op. at 12, even with a relaxed application of Rule 9(b), "broad and sweeping allegations" based purely upon information and belief are insufficient, *Zwirn*,

2014 WL 2932846, at *8; *see also* Bracco Reply at 5 (quoting *Trump for President, Inc. v. Sec'y Pennsylvania*, 830 F. App'x 377, 387 (3d Cir. 2020)) ("Upon information and belief is a lawyerly way of saying that the [plaintiff] does not know that something is a fact but just suspects it or has heard it.").

Accordingly, the Court will dismiss Relator's False Claims and False Records/Statements claims (Counts One and Two).[18] And like with the FAC, dismissal of these counts also requires dismissal of Relator's remaining counts: Conspiracy (Count Three),[19] Reverse False Claims (Count Four),[20] and the state/district FCA equivalent claims (Counts Five through Thirty-Seven), which will also be dismissed.[21]

### C. Amendment Would Be Futile

Defendants argue that the Court should dismiss the SAC with prejudice and not afford Relator another opportunity to amend. *See* DuPage Mot. at 39-40. Defendants highlight that the Court previously "identified numerous deficiencies in the FAC, . . . [y]et the SAC features almost all of the same problems." *Id.* at 40. Relator does not address whether the claims should be

---

[18] Again, because the Court finds the FAC does not satisfy Rule 9(b) as to all Defendants, the Court will not address Defendants' other arguments.

[19] The Court previously dismissed Count Three because "there can be no liability for conspiracy where there is no underlying violation of the FCA." MTD Op. at 14 (quotations and citation omitted). Because all of Relator's federal FCA claims will be dismissed, Count Three will be dismissed.

[20] The Court previously dismissed Count Four because it was based on the same conduct as Relator's FCA Claims. *See id.* at 13 (citation omitted) ("[I]t is well-settled that reverse false claims may not be based on the same conduct as a plaintiff's [False Claims and/or False Records/Statements claims]."). Relator concedes "that no new independent allegations have been added to the SAC regarding the reverse false claims." Opp'n at 25. Thus, as the Court already determined, Count Four will be dismissed.

[21] The Court previously dismissed the state/district FCA equivalent claims because when a "state law claim rests on the exact same factual allegations and exact same kickback theory as" the federal FCA claims, the state/district equivalent pleadings are necessarily deficient. MTD Op. at 14 (citing cases). Accordingly, these claims will be dismissed.

13

dismissed with prejudice. *See generally* Opp'n. The Court agrees with Defendants and will dismiss the SAC with prejudice.

"A district court may deny leave to amend a complaint where it is apparent from the record that '(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.'" *U.S. ex rel. Schumann v. Astrazeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). Further, a court appropriately exercises its discretion to dismiss a complaint with prejudice "where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them." *Id.* (quoting *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002)).

The Court previously provided Relator "with a detailed blueprint" on how to "support [his] fraud claim allegations with particularity . . . ." *Cali. Pub. Emps. Retirement Sys. v. Chubb Corp.*, 394 F.3d 126, 164 (3d Cir. 2004); *see also supra* Section III(B) (citing MTD Op. at 11-12) (detailing the Court's previous instructions). But besides omitting the claims previously dismissed with prejudice and adding Kern County as a Defendant, the only material difference between the FAC and the SAC is that the SAC attaches and includes details from some of the alleged "sham" Agreements. *See supra* Section III(B). Though Relator claimed these Agreements would "bolster" his claims, as the Court already found, they do not. *See supra* Section III(B) (detailing why the SAC fails for the same reasons the FAC failed); MTD Op. at 11-12. Without the Agreements, Relator does not appear to have, nor does he claim to have, another way to plead his claims with particularity. *See Astrazeneca Pharms.*, 769 F.3d at 849 (dismissing claims with prejudice because "if [the plaintiff] could plead such facts, he would have already done so").

Accordingly, the Court's dismissal of the SAC will be with prejudice. *See Chubb Corp.*, 394 F.3d at 164 (affirming dismissal of the plaintiffs' second amended complaint with prejudice where plaintiffs "utterly failed to comply with the District Court's directives" as to how to satisfy Rule 9(b)); *Boyd v. Tempay*, 2008 WL 5156307, at *5 (D. Del. Dec. 4, 2008) (dismissing the plaintiff's amended complaint with prejudice for failure to satisfy Rule 9(b) where the plaintiff "was given an opportunity to correct his pleading deficiencies, to no avail"); *Gasoline Sales, Inc. v. Aero Oil Co.*, 39 F.3d 70, 74 (3d Cir. 1994) (internal quotation marks omitted) ("The third amended (i.e. fourth) complaint that [plaintiff] seeks to file[]" was properly denied because "three attempts at a proper pleading is enough").

## IV.  CONCLUSION

For the reasons above, the Defendants' respective motions, D.E.s 93, 95-98, 100, will be **GRANTED**, and Relator's Second Amended Complaint will be **DISMISSED with prejudice**. An appropriate Order accompanies this Opinion.

Dated: March 12, 2024

Evelyn Padin, U.S.D.J.